No. 23-10246

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

STATE OF TEXAS; AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS & GYNECOLOGISTS; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS,

Plaintiffs-Appellees,

v.

XAVIER BECERRA; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CENTERS FOR MEDICARE AND MEDICAID SERVICES; KAREN L. TRITZ; DAVID R. WRIGHT,

Defendants-Appellants.

_____

On Appeal from the United States District Court for the Northern District of Texas

_____

## AMICUS BRIEF FOR LIFE LEGAL DEFENSE FOUNDATION SUPPORTING AFFIRMANCE AND PLAINTIFFS-APPELLEES

_____

REBECCA R. MESSALL
  COUNSEL OF RECORD
MESSALL LAW FIRM, LLC
7887 E. Belleview Avenue, Suite 1100
Englewood, CO 80111
Tel.: (303) 228-1685
rm@lawmessall.com

CATHERINE SHORT
LIFE LEGAL DEFENSE
  FOUNDATION
P.O. Box 1313
Ojai, CA 93024-1313
Tel.: (707) 337-6880

*Counsel to Amicus Curiae*

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel of record certifies that the following listed persons and

entities have an interest in the outcome of this case pursuant to Rule 28.2.1.  These

representations are made in order that the judges of this Court may evaluate

possible disqualification or recusal.

**Plaintiffs-Appellees**
State of Texas
American Association of Pro-Life Obstetricians & Gynecologists ("AAPLOG")
Christian Medical and Dental Association ("CMDA")
        (Neither AAPLOG nor CMDA have parent corporations nor are either
owned by a publicly held corporation holding more than 10% of stock)

**Defendants-Appellants**
Xavier Becerra
United States Dept. of Health and Human Services
Centers for Medicare & Medicaid Services
Karen L. Tritz,
David R. Wright.

**Counsel for Plaintiffs-Appellees:**
*Office of the Texas Attorney General,*
        John Scott
        Brent Webster
        Lanora C. Pettit
        Natalie D. Thompson
        Sara B. Baumgardner,
*Alliance Defending Freedom*
        Matthew S. Bowman
        Julie Marie Blake
        John J. Bursch,
        Ryan L. Bangert,

**Counsel for Defendants-Appellants**
*United States Department of Justice*
        Brian M. Boynton

Leigha Simonton
Michael S. Raab,
McKaye L. Neumeister
Nicholas S. Crown.

**Amicus Curiae**
Life Legal Defense Foundation

**Amicus Curiae and Counsel for Plaintiffs-Appellees**
Life Legal Defense Foundation (LLDF)
    (Life Legal Defense Foundation does not have a parent corporation nor does a publicly held corporation hold any stock in it.)
    Catherine W. Short
*Messall Law Firm*, *LLC*
    Rebecca R. Messall

**Amici and Counsel for Defendants-Appellants**
American Academy of Pediatrics
American College of Emergency Physicians,
American College of Obstetricians and Gynecologists,
American Medical Association, American Public Health Association, Society for Maternal-Fetal Medicine.

*Debevoise & Plimpton*
    Shannon Rose Selden
    Adam Aukland-Peck

*Democracy Forward Foundation*
    Jeffrey B. Dubner
    Skye L. Perryman

| *City & County of San Francisco* | *County of Los Angeles* |
|---|---|
| David Chiu | Dawyn Harrison |
| *City of Philadelphia* | *County of Monterey* |
| Diana P. Cortes | Leslie J. Girard |
| *City of Northampton* | *County of Marin* |

Alan Seewald

*City of Madison*
Michael Haas

*City of Austin*
Anne L. Morgan

*Travis County, TX*
Delia Garza

*County of Santa Clara, CA*
Rachel Neil
James R. Williams
Kavita Narayan
Meridith A. Johnson

*State of Arizona*
Kristin K. Mayes

*State of California*
Rob Bonta
Renu R. George
Karli Eisenberg
David Houska
Hayley Penan

*State of Colorado*
Philip J. Weiser

*Commonwealth of Massachusetts*
Andrea Joy Campbell

*State of Michigan*
Dana Nessel

*State of Minnesota*
Keith Ellison

*State of Nevada*

Brian E. Washington

*County of Milwaukee*
Margaret C. Daun

*King County*
Leesa Manion

*State of Connecticut*
William Tong

*State of Delaware*
Kathleen Jennings

State of Maine
Aaron M. Frey

*State of Hawaii*
Anne E. Lopez

*State of New York*
Letitia James
Barbara D. Underwood
Ester Murdukhayeva
Galen Sherwin
Laura Etlinger

*State of Maryland*
Anthony Brown

*State of New Mexico*
Raul Torrez

*State of Washington*
Robert W. Ferguson

*State of North Carolina*
Joshua H. Stein

*State of Oregon*

Aaron D. Ford

Ellen F. Rosenblum

*State of New Jersey*
    Matthew J. Platkin

*Commonwealth of Pennsylvania*
        Michelle A. Henry

*State of Rhode Island*
    Peter F. Neronha

*District of Columbia*
        Brian L. Schwalb

/s/ Rebecca R. Messall
Rebecca R. Messall
 Counsel of Record for *Amicus Curiae*
Life Legal Defense Foundation

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................... i

TABLE OF AUTHORITIES .................................................... ii

INTEREST OF AMICUS ........................................................1

SUMMARY OF THE ARGUMENT ........................................2

ARGUMENT ...........................................................................3

   I.   EMTALA Must Be Construed Non-Discriminatorily Toward Pregnant-Women-Not-In-Labor to Avoid an Absurd and Cruel Result When an Unborn Child Potentially Faces a Medical Emergency...................................3

  II.  The Born Alive Infant Protection Act, 1 U.S.C. § 8(a), Does Not Preclude Construing "Individual" in EMTALA to Encompass the Unborn. .................9

 III.  EMTALA Pre-Empts Only Directly Conflicting State Law "Requirements," Not Prohibitions...........................................................10

CONCLUSION ......................................................................14

# TABLE OF AUTHORITIES

## Cases

*66 Federal Credit Union v. Tucker*, 853 So.2d 104 (Ky. 2003) .................................6

*Banks v. Chicago Grain Trimmers*, 390 U.S. 459 (1968) .........................................8

*Chamber of Commerce v. Whiting*, 563 U.S. 582 (2011). ......................................13

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) .............8

*Leal v. C.C. Pitts Sand & Gravel, Inc*., 419 S.W. 2d 820 (Tex. 1967) ....................5

*Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319
   (5th Cir. 1998) .................................................................................................6

*Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008)...............................................7

*Nelson v. Galveston, H. & S.A. Railroad Co*., 14 S.W. 1021 (Tex. 1890)...............5

*Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833
   (1992).................................................................................................................8

*Public Citizen v. Nuclear Regulatory Commission*, 901 F.2d 147 (D.C. Cir.
   1990) ...............................................................................................................11

*Sebelius v. Cloer*, 569 U.S. 369 (2013) ...................................................................4

*Springboards to Educ., Inc v. McAllen Indep. Sch. Distr.*, 62 F.4th 174 (5th
   Cir. 2023). .........................................................................................................3

*Thornburgh v. Am. Coll. of Obstetricians & Gynecologists*, 476 U.S. 747
   (1986).................................................................................................................8

*United States v. Texas*, No. 22-58, 599 U.S. _ slip op. at 12 (June 23, 2023) .........12

*Wiersma v. Maple Leaf Farms*, 543 N.W.2d 787 (S.D. 1996) .................................6

## Statutes

1 U.S.C. § 8...........................................................................................................1, 2

1 U.S.C. § 8(a) ..........................................................................................................9

1 U.S.C. § 8(c) .....................................................................................................2, 10

15 U.S.C. § 1334(b) .................................................................................................11

42 U.S.C. § 1395dd................................................................................................ passim

42 U.S.C. § 1395dd(a) ..............................................................................................6

42 U.S.C. § 1395dd(c)(1)(A)(ii).................................................................................5

42 U.S.C. § 1395dd(c)(2)(A) ......................................................................................5

42 U.S.C. § 1395dd(d)(2)(A).......................................................................................5

42 U.S.C. § 1395dd(e)(1)(A) ............................................................7

42 U.S.C. § 1395dd(e)(1)(A)(i) ......................................................5

42 U.S.C. § 1395dd(e)(1)(B)(ii) .....................................................5

42 U.S.C. § 1395dd(f) ......................................................10, 11, 13

Alaska Stat. § 09.55.585 (2018) ......................................................8

Alaska Stat. § 11.81.900 (2018) ......................................................8

Fla Stat. § 775.021(5)(e) (2018) ......................................................8

Kan. Stat. § 60-1901(c)(Supp. 2016) ..............................................8

## Other Authorities

*American Heritage Dictionary of the English Language* (5th ed.) .........................11

*Black's Law Dictionary* (10th ed. 2014) ........................................11

Roden, *Prenatal Tort Law and the Personhood of the Unborn Child: A Separate Legal Existence*, 16 St. Thomas Law Rev. 207 (2003) .........................5

W. Prosser, *The Handbook on the Law of Torts* §56 (3d Ed. 1964) .........................4

## INTEREST OF AMICUS[1]

*Amicus* Life Legal Defense Foundation is a California non-profit 501(c)(3) public interest legal and educational organization that works to assist and support those who advocate in defense of life. Its mission is to give innocent and helpless human beings of any age, particularly unborn children, a trained and committed defense against the threat of death, and to support their advocates in the nation's courtrooms.

*Amicus* follows the science in recognizing that life begins at the moment of conception and does not end until natural death. It litigates cases to protect human life, from preborn babies targeted by a billion-dollar abortion industry to the elderly, disabled, and medically vulnerable denied life-sustaining care.

*Amicus* sees in the present case an opportunity for this Court to uphold an unborn child's right to emergency medical care according to the ordinary meaning of the words Congress chose to use in the text of the Emergency Medical Treatment and Labor Act (EMTALA) (42 U.S.C. § 1395dd) and the Born Alive Infant Protection Act (1 U.S.C. § 8).

---

[1] This brief was wholly authored by counsel for Amicus Life Legal Defense Foundation. No party or counsel for any party made any financial contribution toward the preparation or submission of the brief. No person other than amicus Life Legal Defense Foundation made any monetary contribution toward this brief's preparation or submission. The parties' counsel of record gave written consent for this amicus brief.

## SUMMARY OF THE ARGUMENT

Appellants claim the July 2022 Guidance (ROA: 214-19) challenged in this matter simply interprets the legal obligations of hospitals and staff pursuant to Emergency Medical Treatment and Labor Act ("EMTALA"). However, fundamental maxims of statutory construction negate Appellants' interpretation of the Guidance as requiring abortion.

First, the Guidance violates EMTALA's express protections for the life and health of any "individual." Using canons of construction for an undefined word, the ordinary meaning of "individual" means a member of the species *homo sapiens* and includes an unborn child, contrary to Appellants' reliance upon the Born Alive Infant Protection Act of 2002 ("BAIPA"), which **does not exclude** an unborn child from rights afforded to an infant "born alive."

Second, BAIPA expressly reserves rights for members of the species *homo sapiens* "at any point prior to being 'born alive.'" 1 U.S.C. § 8(c).

Third, EMTALA expressly restricts preemption to any state or local "requirement" in direct conflict with any EMTALA "requirement." The Guidance ignores the ordinary meaning of the word "requirement" by adding words that do not exist in EMTALA. Appellants incorrectly state that a state's mere "definitions" or "laws" trigger preemption, whereas EMTALA refers to an affirmative state "requirement." As Appellants acknowledge, Texas law regarding abortion creates

a "prohibition," not a "requirement." Appellants' Opening Brief ("AOB") at 12 (Texas abortion law "prohibits abortion" with some exceptions). EMTALA's preemption clause is not triggered by a "prohibition" nor by a "definition" nor merely by a "state law," unless it imposes a "requirement" in direct conflict with an EMTALA "requirement."

## ARGUMENT

**I.    EMTALA Must Be Construed Non-Discriminatorily Toward Pregnant-Women-Not-In-Labor to Avoid an Absurd and Cruel Result When an Unborn Child Potentially Faces a Medical Emergency.**

The district court below held that EMTALA's definition of "emergency medical condition" includes the "health of the unborn child." ROA: 934. This Court, however, may affirm the judgment on legal grounds other than those relied upon by the district court. *Springboards to Educ., Inc v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023). Thus, Amicus urges a finding that EMTALA's use of the word "individual," includes an "unborn child." This construction eliminates any alleged ambiguity in the statute. *See* AOB:28, ¶B.

Appellants contend that, even after provisions concerning the "unborn child" were added to EMTALA in 1989, a hospital's legal duties to pregnant-women-not-in-labor are still only "to the pregnant individual," not to the unborn child or fetus. Although statutory terms should be interpreted according to their ordinary meaning,

*Sebelius v. Cloer*, 569 U.S. 369, 376 (2013), Appellants assert categorically that the word "individual," as used in EMTALA, "does not include the fetus." AOB:34.

Appellants' position is both internally inconsistent and logically unsound.

First, elsewhere in their argument, Appellants themselves assume that the unborn child is an "individual" as that term is used in EMTALA. When constructing an argument around informed consent, Appellants construe the statute to mean that pregnant women will be "acting on behalf of the fetus," i.e., the "individual," in deciding whether to consent to or refuse treatment for the unborn child. AOB:42-43.

Second, with logic akin to the nineteenth century theory that an unborn child has no separate legal existence apart from his mother, Appellants attribute the same view to EMTALA in arguing against any duty toward the life or health of the unborn child unless "posing a threat to the pregnant woman herself." *Id.* at 35.

However, the theory that an unborn child is without its own separate legal existence[2] was soundly rejected across the nation by mid-twentieth century courts. "Beginning with a decision in the District of Columbia in 1946, a rapid series of cases, many of them expressly overruling prior holdings, have brought about what was up till that time the most spectacular, abrupt reversal of a well settled rule in the whole history of the law of torts."[3] In 1890, Texas foreshadowed the change in tort

---

[2] Roden, *Prenatal Tort Law and the Personhood of the Unborn Child: A Separate Legal Existence*, 16 St. Thomas Law Rev. 207, 213-214 (2003).
[3] *Id.* at 237, *quoting* W. Prosser, *The Handbook on the Law of Torts* §56 (3d Ed. 1964).

law when a son, born posthumously, was granted the right to sue for his father's wrongful death. *Nelson v. Galveston, H. & S.A. Railroad Co*., 14 S.W. 1021 (Tex. 1890). In 1967, Texas recognized, under its wrongful death statute, a right to recover for a child who, after being born alive, subsequently died from injuries *in utero*. Roden at 245, *citing, Leal v. C.C. Pitts Sand & Gravel, Inc*., 419 S.W. 2d 820 (Tex. 1967). Notably, for violations of EMTALA, "any individual" may obtain damages. 42 U.S.C. § 1395dd(d)(2)(A).  Finding a child *in utero* to be an "individual" under EMTALA allows him to pursue a statutory cause of action for his own injuries sustained from violations of the statute.

Appellants' argument fails to note that EMTALA's 1989 amendment added the disjunctive word "or" in front of the phrase "unborn child," indicating the child's separate, individual and legal existence. The word "or" negates Appellants' argument that Congress merely expanded the conditions "for which a pregnant woman must be offered treatment as the [only] person to whom the statute's duties run." AOB:41 (brackets added). Notably, the amendment made no change to the words "emergency medical condition," but clearly referred to an unborn child as a separate individual. This reference is not contained in only one "talismanic" provision (AOB:33) in §1395dd(e)(1)(A)(i), but also in three additional provisions, (c)(1)(A)(ii), (c)(2)(A) and (e)(1)(B)(ii).  Thus, as other courts have found regarding similar statutory amendments, Congress added the phrase "unborn child" to

EMTALA because it regarded the child as a separate individual in regard to emergency room care.[4]

Moreover, Appellants argue: "By expressly creating a duty only to individuals with respect to screening, stabilization, and transfer, Congress did not also extend those duties to the 'unborn.'" AOB:34; *id.* at 17 ("Nor does it create separate and equivalent statutory obligations to both a pregnant individual and her 'unborn child.'") However, Appellants' argument that hospitals have no independent duty to an unborn child unless his or her condition threatens the mother's health would turn pregnant-women-not-in-labor into a disfavored class of people as to whom federally-funded hospitals may freely engage in "dumping." As the district court correctly found, "The primary purpose of EMTALA is 'to prevent 'patient dumping,' which is the practice of refusing to treat patients who are unable to pay.' *Marshall ex rel. Marshall v. E. Carroll Par. Hosp. Serv. Dist.*, 134 F.3d 319, 322 (5ᵗʰ Cir. 1998) (collecting cases)." (ROA:934)

EMTALA's language establishes the legal rights of "any individual," including situations where "a request is made **on the individual's behalf** for examination or treatment . . . ." 42 U.S.C. § 1395dd(a) (emphasis added). Correctly

---

[4] *See e.g. Wiersma v. Maple Leaf Farms*, 543 N.W.2d 787 (S.D. 1996) (holding that state's 1984 amendment to its wrongful death statute, by adding the phrase "unborn child," broadened the statute to include a cause of action for the child's death in the womb); *66 Federal Credit Union v. Tucker,* 853 So.2d 104 (Ky. 2003) (holding that the word "person" in wrongful death statute includes a fetus who is "quick" in the womb).

construed, EMTALA authorizes a pregnant woman, who is not in labor but who is nevertheless concerned about the condition of her unborn child --- after, for example, noticing that the movements in her womb have stopped, or after suffering some trauma to her abdomen --- to seek help at an emergency room "on behalf of" an "individual," *i.e.,* her unborn child who is feared to be facing an "emergency medical condition." *Id*. at (e)(1)(A).

Appellants argue that care can be denied if an unborn child's condition is not a threat to the mother. By a convoluted construction of EMTALA, they ask this Court to hold that Congress intended to create a loophole allowing hospitals to "dump" a specific segment of the population, namely, pregnant-women-not-in-labor.

Appellants' discriminatory construction against this group of patients cannot be countenanced for a number of reasons, including this Court's recognition of "the well-established maxim that statutes should be construed to avoid an absurd result." *Martinez v. Mukasey*, 519 F.3d 532, 544 (5th Cir. 2008). An absurd result would follow if a federal statute prohibiting the dumping of "any individual" excluded the dumping of pregnant-women-not-in-labor who seek care on behalf of an unborn child.

To avoid the above-described absurdity, the word "individual" should be interpreted in accord with another maxim, *i.e.,* that words used in a statute are given

their ordinary meaning in the absence of persuasive reasons to the contrary. *Banks v. Chicago Grain Trimmers*, 390 U.S. 459, 465 (1968). The ordinary connotation of the word "individual" refers to a human being, commonly known as a "member of the species *homo sapiens*." Many years ago, this basic fact was recognized:

> However one answers the metaphysical or theological question whether a fetus is a 'human being' ... one must at least recognize, first, that the fetus is an entity that bears in its cells all the genetic information that characterizes a member of the species *homo sapiens* and distinguishes an individual member of that species from all others, and second, there is no nonarbitrary line separating a fetus from a child or, indeed, an adult human being."

*Thornburgh v. Am. Coll. of Obstetricians & Gynecologists,* 476 U.S. 747, 792 (1986) (White, J., dissenting), *overruled, Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), *overruled, Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022); *see also, e.g.,* Alaska Stat. § 09.55.585 (2018) & § 11.81.900 (2018) (defining "unborn child" as a member of the species homo sapiens, at any stage of development, who is carried in the womb); Fla Stat. § 775.021(5)(e) (2018) (defining "unborn child" as "a member of the species homo sapiens at any state of development, who is carried in the womb"); Kan. Stat. § 60-1901(c)(Supp. 2016) (defining "unborn child" as "a living individual organism of the species homo sapiens, *in utero*, at any stage of gestation from fertilization to birth.").

**II.      The Born Alive Infant Protection Act, <u>1 U.S.C. § 8(a)</u>, Does Not Preclude Construing "Individual" in EMTALA to Encompass the Unborn.**

Appellants attempt to bolster their argument that the word "individual," in EMTALA, does not include an unborn child by citing the Born Alive Infant Protection Act (which Appellants more blandly identify as section 8 of the Dictionary Act). AOB:34.  The first paragraph of BAIPA, <u>1 U.S.C. § 8(a)</u>, declares something most people (but unfortunately not all) would view as an obvious fact regarding children born alive following an attempted abortion, *i.e.,* that a born-alive infant of the **species homo sapiens** is included within the meaning of the words "person, human being, child and individual" so as to receive the benefits of federal laws. The section provides:

(a) In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United State, the words "person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development.

<u>1 U.S.C. § 8(a)</u> (emphasis added).

Significantly, by merely clarifying that any infant "born alive" **is** within the meaning of certain statutory words (whether or not an abortion was attempted), Congress deliberately **did not exclude** any legal rights of an infant prior to birth because the statute explicitly states it does not alter any such rights. It provides:

(c)    Nothing in this section shall be construed to affirm, **deny,** expand, or contract any legal status or **legal right applicable to any member of**

**the species homo sapiens at any point prior** to being "born alive" as defined in this section.

1 U.S.C. § 8(c) (emphasis added).

Appellants' argument is without merit in suggesting that paragraph (a) should be construed to mean that only "born alive infants" are within EMTALA's meaning of the word "individuals." As just noted, section 8(a) simply attempts to settle disputes over whether the listed words include born alive infants in various parts of federal law. But section 8(c) makes clear that the statute does not alter any rights prior to birth as are applicable to members of the species *homo sapiens*. Appellants offer no rationale, other than an incorrect reading of BAIPA, to exclude an unborn child from the meaning of "individual." Accordingly, EMTALA should be construed so that an "unborn child" is included in the ordinary meaning of the word "individual" to avoid the absurd result described above and to afford a child injured *in utero* the right to seek damages under EMTALA.

## III. EMTALA Pre-Empts Only Directly Conflicting State Law "Requirements," Not Prohibitions.

EMTALA provides:

The provisions of this section do not preempt any State or local law **requirement**, except to the extent that the **requirement** directly conflicts with a **requirement** of this section."

42 U.S.C. § 1395dd(f) (emphasis added).

The ordinary meaning of the word "requirement" means "something that must be done." *Black's Law Dictionary* (10th ed. 2014); s*ee also Public Citizen v. Nuclear Regulatory Commission*, 901 F.2d 147, 156 (D.C. Cir. 1990) (holding that agency's statutory duty to provide training "requirements" was not satisfied by instead issuing "non-mandatory regulatory guidance"). In contrast to a requirement, Texas's abortion statute creates a prohibition, meaning a rule or law that forbids something. *American Heritage Dictionary of the English Language* (5th ed.).

Obviously, Texas's statute forbidding certain abortions is not a "requirement" of "something that must be done." Accordingly, such a prohibition is not within the meaning of the text in §1395dd(f). Said another way, EMTALA does not preempt "prohibitions" by state or local law, as Congress has done in other important contexts. *See e.g.,* 15 U.S.C. § 1334(b) ("No requirement **or prohibition** based on smoking and health shall be imposed under State law with respect to the advertising and promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.") (Emphasis added).

Each word, or the absence of words, in statutes is presumed to have an intentional significance: "Hornbook canons of statutory construction require that every word in a statute be interpreted to have meaning, and Congress's use and withholding of terms within a statute is taken to be intentional." *Cham. of Comm. v. United States Dep't of Labor.,* 885 F.3d 360, 381 (5th Cir. 2018. The distinction

between legal "requirements" and "prohibitions" is also recognized in jurisprudence. *See e.g., United States v. Texas*, No. 22-58, 599 U.S. _ slip op. at 12 (June 23, 2023) ("Moreover, the Federal Judiciary of course routinely decides justiciable cases involving statutory **requirements or prohibitions** on the Executive.") (Emphasis added).

Appellants never identified a specific state "requirement" supposedly in direct conflict with an EMTALA "requirement." Rather, Appellants' arguments, and the Guidance itself, add words which the statute does not contain. The Guidance incorrectly states that preemption is triggered, not by a state "requirement," but by merely "definitions" or "laws." ROA:218. Appellants also substitute their own choice of words such as "state abortion restriction" (AOB:45) and "any state law" for EMTALA's word "requirement." Appellants wrongly declare that the Guidance merely "reiterates that **any state law** barring the provision of abortion care when it constitutes the necessary stabilizing medical treatment directly conflicts with EMTALA and is preempted." AOB:17 (emphasis added). Appellants also wrongly declare that the Guidance is a reminder that "abortion care" cannot be excluded "'irrespective of any **state laws** or mandates that [might] apply.'" *Id*. at 28 (emphasis added). All of these instances illustrate Appellants' substitutions for the word "requirement," the word actually passed by Congress in EMTALA.

"When a federal law contains an express preemption clause, we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011). Under EMTALA, preemption is only triggered when "something that must be done" under Texas law "directly conflicts" with "something that must be done" under EMTALA. Inasmuch as Texas's law "prohibits abortion" with some exceptions (AOB:12), it is not an affirmative "requirement" by the state. EMTALA's preemption language pursuant to 42 U.S.C. § 1395dd(f) is simply not triggered in the case at bar.

Congress is aware of the difference between state law prohibitions versus state law requirements. Yet it chose not to fashion EMTALA into a comprehensive preemption scheme. In fact, Congress expressly fashioned EMTALA as a "no preemption" statute, subject to the very narrow exception for a state "requirement" that directly conflicts with a specific requirement of EMTALA. Appellants point to no **affirmative state requirement** directly conflicting with an EMTALA requirement.[5]

---

[5] Having failed to identify in the district court (or in their opening brief) any "requirement" of Texas law in direct conflict with EMTALA, they have waived the right to do so now.

## CONCLUSION

For the reasons set forth above, Amicus respectfully urges the Court to uphold

the district court's judgment.

Dated: July 9, 2023                    Respectfully submitted,

                                       MESSALL LAW FIRM, LLC

                                       By: /s/ Rebecca R. Messall
                                       Rebecca R. Messall
                                       7887 E. Belleview Avenue
                                       Suite 1100
                                       Englewood, CO 80111
                                       Tel: (303) 228-1685
                                       rm@lawmessall.com


                                       Catherine Short
                                       LIFE LEGAL DEFENSE
                                       FOUNDATION
                                       P.O. Box 1313
                                       Ojai, CA 93024-1313
                                       Tel: (707) 337-6880
                                       kshort@lldf.org

                                       *Attorneys for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 3065 words, excluding parts of the brief exempted by Rule 32(f), and also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) by being prepared in proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman. As permitted under Fifth Circuit Rule 32.1, footnotes appear in 12-point font.

/s/Rebecca R. Messall
Rebecca R. Messall

## STATEMENT UNDER FED. R. APP. 29(a)(4)(E)

No counsel for a party authored this brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparation or submission of the brief; and no person other than the amicus curiae or its counsel contributed money that was intended to fund preparing or submitting the brief.

## CERTIFICATE OF SERVICE

I certify that on July 9, 2023, the foregoing document was filed with the Clerk of the Court using the CM/ECF system, causing it to be served on all counsel of record.

/s/Rebecca R. Messall
Rebecca R. Messall
